Compensation Appeals Board
No. 97-754

APPEAL OF RAYMOND BERGERON

(New Hampshire Compensation Appeals Board)

March 16, 2000

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Charles B. Doleac* and *Benjamin T. King* on the brief, and *Mr. King* orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Patrick C. McHugh* on the brief and orally), for the respondent.

BRODERICK, J. The petitioner, Raymond Bergeron, appeals a decision of the New Hampshire Compensation Appeals Board (board) denying him workers' compensation benefits from respondent Richards & Sons, Inc., his prior employer, for medical expenses related to his 1996 hip replacement surgery. He argues that the board erred when it concluded that his condition necessitating the surgery resulted from either cumulative trauma or the aggravation or exacerbation of a preexisting condition. We vacate and remand.

We recite the facts as found by the board or as presented in the record. In 1985, the petitioner was employed by the respondent as a carpenter. On October 4, 1985, while returning to the work site after a break, he fell, injuring his neck, left ankle, and left hip. After missing approximately ten months of work, the petitioner returned to his job in July 1986. During his absence from work, the petitioner was treated by several doctors, underwent physical therapy, and received workers' compensation benefits, which the respondent's insurer voluntarily paid. The petitioner subsequently left his employment with the respondent and later became self-employed as a carpenter. Nothing in the record indicates that the petitioner sought further medical treatment for his hip until he was examined for left hip pain in 1994. Two years later, he underwent recommended hip replacement surgery.

The petitioner filed a workers' compensation claim against the respondent, asserting that his hip condition was a consequence of his 1985 work injury. A department of labor hearing officer denied his claim, and after a *de novo* hearing, the board concurred. After reciting minimal factual findings, the board ruled:

> The burden of proof is on the claimant to prove that the 1985 fall caused his 1994 disability.

The medical evidence will support, at least in part, that the 1985 incident caused his 1994 disability. There is some conflicting medical evidence.

As for the legal causation as stated in [Appeal of Briggs, 138 N.H. 623, 645 A.2d 655 (1994)], the Board was faced with the fact that the claimant did not treat with Dr. Sterns from April 18, 1986 until he saw Leo M. Kinney, D. O. on April 21, 1994, when he was self-employed as a carpenter. In the case of [Appeal of Briggs] it stated that cumulative trauma does not result in injuries under workers' compensation law until the employee is unable to continue working, and the same rule applies where the claimant has a preexisting condition not caused but rather aggravated or exacerbated by cumulative work-related activities. It further states that the Workers' Compensation Statute requires that when the claimant is exposed to cumulative trauma resulting in disability, the employer at the time the disability arises bears the burden of any workers' compensation benefits owing, and therefore, the petitioner's most recent employer at the time of disability in 1994 was himself as a self-employed carpenter, and whether he had coverage or not, he was still working.

After an unsuccessful motion for reconsideration, the petitioner appealed.

On appeal, the petitioner argues that the board erred in concluding that his 1994 hip condition resulted either from cumulative trauma or an aggravation or exacerbation of a preexisting condition. He contends that under RSA 281-A:23, I (1999), the respondent is liable for the costs related to the 1996 surgery because it is responsible for any medical treatment related to the 1985 injury, and that the medical evidence conclusively established that his 1994 hip condition directly and naturally resulted from the 1985 injury. We will not disturb the board's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. See RSA 541:13 (1997).

RSA 281-A:23, I, provides in pertinent part:

An employer subject to this chapter, or the employer's insurance carrier, shall furnish or cause to be furnished to an injured employee reasonable medical, surgical, and hospital services, remedial care, nursing, medicines, and mechanical and surgical aids for such period as the nature of the injury may require.

Thus, an employer has a "continuing obligation to provide or to pay for medical, hospital, and remedial care for as long as is required by an injured employee's condition" where it bears liability for the initial injury that necessitated the subsequent health care. *Appeal of Cote*, 139 N.H. 575, 581, 660 A.2d 1090, 1095 (1995) (quotation omitted).

■ The petitioner's status as an "injured employee" under RSA 281-A:23, I, regarding the 1985 injury is manifest. The record demonstrates that the petitioner suffered a work-related, compensable injury in 1985 when he injured his neck, left ankle, and left hip. The respondent's insurer voluntarily paid the petitioner workers' compensation benefits for the time he was out of work. Although the petitioner terminated his employment with the respondent before he suffered the 1994 hip condition, the respondent had a continuing obligation to pay for all necessary and reasonable medical, hospital, and remedial treatment associated with his 1985 injury absent an independent, intervening cause. *See id.* The mere fact that the petitioner was not employed by the respondent at the time he suffered the 1994 hip condition does not affect the continuing duty of the respondent under RSA 281-A:23, I, to discharge ongoing and related medical expenses. *See Town of Hudson v. Wynott*, 128 N.H. 478, 483, 522 A.2d 974, 977 (1986).

We reject the respondent's argument that *Appeal of Briggs*, 138 N.H. 623, 645 A.2d 655 (1994), governs this case. Although the employee in *Briggs* suffered two injuries to his knees while at work several years prior to the incident precipitating his knee disability, there is no indication that the prior injuries were compensable under the workers' compensation scheme. *See Appeal of Wausau Ins. Co.*, 143 N.H. 478, 480-81, 727 A.2d 988, 990 (1999) (injury not cognizable under workers' compensation scheme unless it produces some work-related, compensable disability). RSA 281-A:23, I, however, was not at issue in that case.

The sole issue in this case is whether the condition that necessitated the petitioner's hip replacement was the direct and natural result of either the 1985 injury or some independent cause. *See Town of Hudson*, 128 N.H. at 481, 522 A.2d at 975-76; *see also Appeal of Cote*, 139 N.H. at 581, 660 A.2d at 1095; 1 A. LARSON & L. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 10.01 (1999) (all medical consequences that flow from the primary injury are compensable). "In the absence of a second independent intervening contributing cause of disability, the employer's insurance carrier on the risk at the time of the original compensable injury is

liable for the employee's continuing incapacity." *Town of Goffstown v. Morgrage*, 122 N.H. 591, 593-94, 448 A.2d 385, 386 (1982).

Our case law examining independent cause primarily involves the effect of a second identifiable incident. *See, e.g., Town of Hudson*, 128 N.H. 478, 522 A.2d 974; *Rumford Press v. Travelers Ins. Co.*, 125 N.H. 370, 480 A.2d 162 (1984). The determinative legal principles, however, are equally applicable when subsequent work activities, without a single identifiable injurious event, are claimed to be an independent, intervening cause of an employee's disabling condition for which benefits are sought. We turn to review the applicable legal standard.

■ To constitute an independent cause of an injured employee's condition, an incident must be "both a *necessary* and a *material* cause of that condition." *Town of Hudson*, 128 N.H. at 482, 522 A.2d at 976. The crucial inquiry is whether the second incident constitutes "an aggravation of a pre-existing condition that has stabilized or, rather, a worsening or exacerbation of an existing condition." *Rumford Press*, 125 N.H. at 374, 480 A.2d at 165; *see Appeal of Commercial Union Ins. Co.*, 140 N.H. 429, 432, 666 A.2d 987, 990 (1995). "In the former instance, the initial injury would have reached a medically stable condition, while in the latter the worker would still be suffering the symptoms of the first injury at the time of the second incident." *Rumford Press*, 125 N.H. at 375, 480 A.2d at 165.

> An important initial determination will be whether the original work-related injury produced a debilitating condition that continued until the alleged second injurious incident. Where the evidence demonstrates that at the time of the second incident the claimant suffered from an ongoing debilitative condition, establishing that the second incident is an independent cause of the disability will, of necessity, be more difficult. In such a situation, it will have to be shown that the second incident produced results that are not only tied to the disability but have intervened to the extent that they were an independent cause of the disability.

*Id.; cf.* 9 A. LARSON & L. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 95.27, at 17-258 to -261 (1999) (if disability is recurrence of prior disability, prior employer remains liable, and continuing symptoms and lack of incident independently explaining disability strongly suggests recurrence). When an employee suffers

from an ongoing debilitative condition, "the second incident must ordinarily be a distinct and extraordinary trauma-inducing event in order to qualify as an independent cause." *Town of Hudson*, 128 N.H. at 482, 522 A.2d at 976. We do not, however, foreclose the possibility that in certain circumstances, subsequent work activities, without a single injurious event, may serve as an independent cause of a disability.

In this case, the board denied the petitioner's claim for benefits, concluding that he subsequently suffered from either cumulative trauma or an aggravation or exacerbation of a preexisting condition. Several deficiencies in the board's order, however, preclude us from adequately reviewing its decision. *See Appeal of Rainville*, 143 N.H. 624, 633, 732 A.2d 406, 413 (1999). Specifically, when ruling on medical causation, the board concluded only that: "The medical evidence will support, at least in part, that the 1985 incident caused his 1994 disability. There is some conflicting medical evidence." This ruling may signify that the petitioner's 1994 hip condition which resulted in the 1996 surgery was a direct and natural result of his 1985 hip injury. The reference to "conflicting medical evidence," however, belies any definitive conclusion on medical causation.

Further, the board prefaced its application of the cumulative trauma and preexisting condition doctrines by referencing the petitioner's lack of medical treatment from April 1986 through April 1994. It failed, however, to address the credibility of the petitioner's testimony that he continued to suffer hip pain over the years but did not seek treatment because he thought that he had to "learn to live with it" until the pain became intolerable in 1994. *Cf. Town of Hudson*, 128 N.H. at 484, 522 A.2d at 977-78. Finally, although in its findings of fact the board noted the petitioner's continued strenuous work as a carpenter while self-employed and a 1994 motorcycle accident in which he injured both knees, it did not make any determination that either circumstance constituted an independent cause of the condition necessitating the petitioner's hip replacement.

■ We reject the petitioner's argument that because the medical evidence in the record conclusively establishes his entitlement to costs related to his 1996 surgery, remand is unnecessary. While some medical evidence supports his claim that the condition necessitating the 1996 surgery was the direct and natural consequence of the 1985 injury, the record also reveals contrary medical evidence suggesting that, for example, his hip condition may have stabilized

as early as 1986. Accordingly, we vacate and remand for the board to make findings and rulings consistent with this opinion.

*Vacated and remanded.*

THAYER, J., sat but, on administrative leave, did not participate; NADEAU, J., did not sit; the others concurred.